No. 16-56338

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

NICOLAS TORRENT,

Plaintiff/Appellant,

vs.

YAKULT U.S.A., INC.,

Defendant/Appellee.

Appeal from the United States District Court
for the Central District of California
Southern Division-Santa Ana

# PLAINTIFF-APPELLANT'S OPENING BRIEF

Cullin O'Brien, Esq.
Cullin O'Brien Law, P.A.
6541 NE 21st Way
Ft. Lauderdale, FL 33308
cullin@cullinobrienlaw.com
Tel:  (561) 676-6370
Fax:  (561) 320-0285

Antonino G. Hernandez, Esq.
Antonino G. Hernandez, P.A.
4 SE 1st St. 2nd Floor
Miami, FL 33131
Tel:  (305) 282-3698
Fax:  (786) 513-7748
hern8491@bellsouth.net

Jared H. Beck, Esq.
Elizabeth Lee Beck, Esq.
Beck & Lee Trial Lawyers
12485 SW 137th Ave., Suite 205
Miami, FL 33186
Tel:  (305) 234-2060
Fax:  (786) 664-3334
jared@beckandlee.com
elizabeth@beckandlee.com

Counsel for Plaintiff/Appellant

# TABLE OF CONTENTS

Page

I. STATEMENT OF JURISDICTION ...............................................................1

II. STATEMENT OF THE ISSUES ....................................................................1

III. REVIEWABILITY AND STANDARD OF REVIEW ..................................1

IV. STATEMENT OF RELATED CASES..........................................................2

V. CONCISE STATEMENT OF THE CASE .....................................................2

    A. Torrent Sued Defendant under the UCL for Falsely Advertising the "Digestive Health" Benefits of the Yakult Beverage.......................2

    B. The District Court Originally Determined that Torrent Had Article III Standing to Seek Injunctive Relief Under the UCL, Denying Defendant's Motions to Dismiss and Ordering Torrent to Refine the Class Action Allegations ...................................................2

    C. The District Court Reversed Course When It Subsequently Denied Torrent's Motion for Class Certification on the Basis that Torrent Lacks Article III Standing to Seek Injunctive Relief Under the UCL ..................................................................................3

    D. After Torrent Purchased Yakult Again and Expressed an Intent to Buy it in the Future, the District Court Denied Torrent's Renewed Motion for Class Certification and Issued Yet Another Article III "Standing" Ruling...................................................4

VI. SUMMARY OF THE ARGUMENT...............................................................5

VII. ARGUMENT....................................................................................................6

    A. The Integrity of Our Consumer Protection Laws Depends Upon the Ability of Deceived Consumer to Seek Injunctive Relief in Federal Court........................................................................................6

**Page**

B. The District Court's Article III Analyses Were Inconsistent and Fundamentally Flawed ...................................................................9

C. The District Court Committed Clear Error in Rejecting Torrent's Renewed Motion for Class Certification Based on a Perceived Local Rule Violation .........................................................11

D. Torrent Easily Satisfied the Elements of Class Certification..............13

VIII. CONCLUSION..................................................................................14

CERTIFICATE OF COMPLIANCE......................................................................14

CERTIFICATE OF SERVICE ................................................................................15

# TABLE OF CITATIONS

**Cases**                                                                                                                                   **Page**

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983) .......................................... 6

*Brooks v. Cook*, 938 F.2d 1048 (9th Cir. 1991) ....................................................... 10

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 975 (1992) ........................................................................................................ 6

*Dean v. Colgate-Palmolive Co.*, No. 15-cv-0107-JGB, 2015 WL 3999313, at *1 (CD. Cal. June 17, 2015) ............................................................................... 7

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ..................................................... 13

*Fitzpatrick v. General Mills*, 635 F.3d 1279 (11th Cir. 2011) ............................ 5, 13

*Gertz v. Robert Welch*, 418 U.S. 323 (1974) ............................................................ 6

*Henderson v. Gruma Corp.*, 2011 WL 1362188, at *1 (C.D. Cal. Apr. 11, 2011) ................................................................................................................ 8

*In re Tobacco II Cases*, 207 P.3d 20 Cal. (2009) ..................................................... 7

*Johnson v. General Mills*, 272 F.R.D. 282 (C.D. Cal. 2011) ................................. 12

*Johnson v. General Mills*, 276 F.R.D. 519 (C.D. Cal. 2011) ................................. 12

*Johnson v. General Mills*, 278 F.R.D. 548 (C.D. Cal. 2011) ................................. 13

*Johnson v. General Mills*, No. SACV 10–00061–CJC(ANx), 2013 WL 3213832, at *1 (C.D. Cal. June 17, 2013) ...................................................... 13

*Johnson v. Mammoth Recreations*, 975 F.2d 604 (9th Cir. 1992) .......................... 11

*Koehler v. Litehouse*, No. 12-cv-04055-SI, 2012 WL 6217635, at *1 (N.D. Cal. Dec. 13, 2012) ............................................................................................ 7

*Larsen v. Trader Joe's Co.*, No. 11-cv-05188 SI, 2012 WL 5458396, at *1 (N.D. Cal. June 14, 2012) ................................................................................ 8

**Page**

*Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200 (11th Cir. 2003) ....... 12

*Mollicone v. Universal Handicraft*, 16-cv-07322-CAS(MRWx), 2017 WL 440257, at *1 (C.D. Cal. Jan. 30, 2017) ................................................. 1, 8

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) .................. 7

*Rodriguez v. Elmore*, 407 Fed. Appx. 124 (9th Cir. Dec. 22, 2010) ......................... 2

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771 (1976) ........................................................................................ 6

*Williams v. U.S. Dist. Court*, 658 F.2d 430 (6th Cir. 1981) ..................................... 12

**CONSTITUTION, STATUTES, RULES AND OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ........................................................................................... *passim*

28 U.S.C. §1291 ....................................................................................................... 1

U.S. Const. Art. III, §2 ............................................................................................ 8

President Theodore Roosevelt, Eighth State of the Union Address, Dec. 8, 1908 .......................................................................................................... 8

## I. STATEMENT OF JURISDICTION

This is an appeal from orders denying Plaintiff-Appellant's Nicolas Torrent's (hereinafter, "Torrent") Rule 23 motions for class certification against Defendant-Appellee Yakult, U.S.A., Inc. ("Defendant"). This Court has jurisdiction of this appeal of under 28 U.S.C. § 1291.

## II. STATEMENT OF THE ISSUES

This Court faces the following question:

Is a plaintiff's purchase of a falsely advertised product sufficient to confer Article III standing to sue for classwide injunctive relief under California's Unfair Competition Law ("UCL")?

This Court's answer to the question will give much-needed guidance to district courts because "[t]here is a split in the Ninth Circuit on whether a plaintiff can establish the requisite threat of future injury in order to have standing to seek injunctive relief." *Mollicone v. Universal Handicraft*, 16-cv-07322-CAS(MRWx), 2017 WL 440257, at *7 (C.D. Cal. Jan. 30, 2017) (internal citations and quotations omitted).

## III. REVIEWABILITY AND STANDARD OF REVIEW

Ordinarily, this Court reviews class certification orders under the abuse of discretion standard. *Moyle v. Liberty Mut. Retirement Ben. Plan*, 823 F.3d 948, 964 (9th Cir. 2016). Here, however the orders on review effectively dismissed Torrent's claim for injunctive relief, and dismissal of a claim is reviewed *de novo*.

*See Rodriguez v. Elmore*, 407 Fed. Appx. 124, 125 (9th Cir. Dec. 22, 2010). Accordingly, *de novo* review applies to this appeal.

## IV. STATEMENT OF RELATED CASES

No other cases in this Court are deemed related.

## V. CONCISE STATEMENT OF THE CASE

### A. Torrent Sued Defendant under the UCL for Falsely Advertising the "Digestive Health" Benefits of the Yakult Beverage

Defendant sells a namesake beverage called, "Yakult." (Doc. 32). Defendant advertises that drinking Yakult provides "digestive health" benefits to its consumers. (Doc. 32).

Torrent purchased Yakult and filed a putative class action lawsuit alleging that Defendant's "digestive health" marketing and advertising campaign is false and deceptive. (Doc. 1). Torrent amended the complaint to proceed solely on a UCL claim on behalf of a California class. (Docs. 20, 32).

### B. The District Court Originally Determined that Torrent Had Article III Standing to Seek Injunctive Relief Under the UCL, Denying Defendant's Motions to Dismiss and Ordering Torrent to Refine the Class Action Allegations

Defendant moved to dismiss on various grounds, including that Torrent lacked standing to obtain injunctive relief under the UCL. (Doc. 21). Defendant also moved to strike Torrent's class action allegations. (Doc. 22).

The District Court denied the motion to dismiss, holding, *inter alia*:

> Plaintiff has sufficiently pled an injury under Article III and the UCL. Article III requires the plaintiff to suffer an injury. . . . Plaintiff was injured, not because the product was defective, but because Defendant made false representations about Yakult's salubrious effects, which induced Plaintiff to purchase a product that he otherwise would not have. . . . Plaintiff has sufficiently established a causal link under Article III and the UCL because he alleges that his injuries were a result of exposure to Defendant's deceptive advertising. . . . Because Plaintiff has standing to bring a UCL claim, he is entitled to seek injunctive relief.

(Doc. 31, pgs. 7-8).

The District Court then ordered Torrent to refine the class period in his class action allegations, (Doc. 31, pgs. 9, 10), which Torrent did, (Doc. 32).

### C. The District Court Reversed Course When It Subsequently Denied Torrent's Motion for Class Certification on the Basis that Torrent Lacks Article III Standing to Seek Injunctive Relief Under the UCL

Torrent moved to certify a class of "all persons or entities who purchased Yakult while physically present in the state of California since January 27, 2011." (Docs. 40-42, 45-47). Defendant opposed the motion, contending that, *inter alia*, because Torrent was already deceived, Torrent did not have Article III standing to seek injunctive relief under the UCL on behalf of future Yakult purchasers. (Doc. 44).

- 3 -

After a hearing on the motion, the District Court denied Torrent's request for class certification, this time determining that "Torrent cannot benefit from injunctive relief," and further holding:

> Article III's standing requirements take precedence over enforcement of state consumer protection laws. . . . Because Torrent has not even alleged that he intends to by Yakult in the future, let alone submitted evidence to that effect, the Court concludes that he lacks Article III standing to pursue injunctive relief here.

(Doc. 52, pgs. 8, 10).

**D.  After Torrent Purchased Yakult Again and Expressed an Intent to Buy it in the Future, the District Court Denied Torrent's Renewed Motion for Class Certification and Issued Yet Another Article III "Standing" Ruling**

After the District Court denied Torrent's motion for class certification, Torrent purchased Yakult and testified that he would purchase Yakult again. (Docs. 53-54, 62). Torrent then renewed the motion for class certification, arguing that he had standing to sue for classwide injunctive relief under the UCL, under the District Court's own rationale as set forth its order denying class certification. (Doc. 53-54, 62).

Defendant opposed the motion, contending that, *inter alia*, the local rules barred the renewed motion for reconsideration and that Torrent was somehow "manufacturing standing." (Doc. 57). Defendant never raised the alleged local rule violation in the pre-filing conference. (Doc. 62, p. 3).

The District Court did not hold a hearing. The District Court denied Torrent's renewed motion for class certification holding, *inter alia*:

> [I]t appears to be an effort to manufacture standing in direct response to this Court's prior ruling . . . . Allowing Torrent to seek injunctive relief based on his recently-expressed intention to purchase Yakult in the future would permit him to fundamentally alter his theory of the case, and would allow him to relitigate issues that this Court has already ruled on. Rule 23 does not require such a result and Local Rule 7-18 prohibits it.

(Doc. 65, pg. 4).

## VI. SUMMARY OF THE ARGUMENT

There is a split in the District Courts concerning whether consumers can utilize federal courts to stop false advertising. If this Court resolves the split against the consumer, as the District Court did, then corporations will be free to lie to the public because no consumer who discovers the deception would have "standing" to seek injunctive relief. As such, maintaining the integrity of the consumer protection laws depends on this Court resolving the split in favor of the consumer.

Furthermore, there is no doubt a class should be certified here, as Torrent satisfied his burden of establishing each of the four elements of Rule 23(a) and the requirements of Rule 23(b)(2). Indeed, the U.S. Eleventh Circuit Court of Appeals ordered class certification for the same type of "digestive health" advertising by General Mills. *Fitzpatrick v. General Mills*, 635 F.3d 1279 (11th Cir. 2011).

This Court should reverse the District Court's denials of class certification and remand for Torrent to proceed on classwide injunctive relief claims under the UCL.

## VII. ARGUMENT

### A. The Integrity of Our Consumer Protection Laws Depends Upon the Ability of Deceived Consumer to Seek Injunctive Relief in Federal Court

False consumer product advertising is not and has never been constitutionally protected. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake"); *Gertz v. Robert Welch*, 418 U.S. 323, 340 (1974) ("But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues.").

Thus, states, including California, have enacted laws like the UCL to stop false advertising. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 69 (1983) ("The State may deal effectively with false, deceptive, or misleading sales techniques.").

The broad remedial purposes of the UCL define its uniquely potent character. *See*, *e.g.*, *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 975 (1992) ("[T]he primary purpose of the [UCL] . . . is to

protect the public from unscrupulous business practices."). Yet the District Court gutted the entire remedial purpose of the UCL, by finding that "Article III's standing requirements take precedence over enforcement of state consumer protection laws." (Doc. 52, pg. 8); *compare*, *e.g.*, *In re Tobacco II Cases*, 207 P.3d 20, 30 (Cal. 2009) ("[C]onsumer class actions and representative UCL actions serve important roles in the enforcement of consumers' rights.") (internal citation omitted).

The District Court's limitation of injunctive relief under the UCL for only those future consumers who do not yet know they have been deceived is a fallacy. None of those future consumers will ever sue because they don't know they are the victims of a lie. And the moment those consumers do in fact realize they are being lied to and seek relief from an Article III court on behalf of similarly-situated consumers, the District Court's analysis would shut the courthouse door in their collective faces. This is an unacceptable result. *See*, *e.g.*, *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("[W]ere the Court to accept the suggestion that plaintiff['s] mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result."); *Koehler v. Litehouse*, No. 12-cv-04055-SI, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012) ("To do otherwise would eviscerate the intent of the California legislature in

creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief."); *Dean v. Colgate-Palmolive Co.*, No. 15-cv-0107-JGB, 2015 WL 3999313, at *8 (CD. Cal. June 17, 2015) ("[F]ederal courts would effectively be prohibited from enjoining false advertising under California's consumer protection laws."); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188 SI, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012) ("Construing Article III standing as narrowly as defendant suggests in consumer protection cases would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief."); *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011) ("With such advertising remaining on supermarket shelves, Plaintiffs, as representatives of a class, should be entitled to pursue injunctive relief on behalf of all consumers in order to protect consumers from Defendant's alleged false advertising."); *Mollicone*, 2017 WL 440257, at *7 ("The Court therefore concludes that plaintiff has adequately pleaded that she has Article III standing to seek injunctive relief.").

    The federal courts were created to, *inter alia*, adjudicate "controversies." U.S. Const. Art. III, §2. Without a court system that actually does, in fact,

adjudicate "controversies," like ongoing false consumer product advertising, we will descend into a dystopic world of self-help chaos:

> To permit every lawless capitalist, every law-defying corporation, to take any action, no matter how iniquitous, in the effort to secure an improper profit and to build up privilege, would be ruinous to the Republic and would mark the abandonment of the effort to secure in the industrial world the spirit of democratic fair dealing.

(*President Theodore Roosevelt, Eighth State of the Union Address, Dec. 8, 1908*).

### B. The District Court's Article III Analyses Were Inconsistent and Fundamentally Flawed

The District Court's Article III analyses wavered between the order denying the motion to dismiss and the two subsequent denials of class certification.

At first, the District Court allowed Torrent's complaint to proceed beyond the pleading stage, expressly stating that "[b]ecause Torrent has standing to bring a UCL claim, he is entitled to seek injunctive relief." (Doc. 31, pgs. 7-8). But when Torrent later filed a motion for class certification under the UCL to seek that very "injunctive relief" the District Court described, the District Court changed course. The District Court determined that Torrent did not have standing because Torrent did not present evidence that he planned to purchase Yakult in the future.

As discussed, the District Court's initial class certification determination does violence to our country's system of consumer protection laws and the broad remedial purposes of the UCL. That aside, the District Court's class certification

determination cannot be reconciled with its prior order denying Defendant's motion to dismiss. At first, the District Court found that Torrent had standing to seek injunctive relief but then, somehow, the District Court found that Torrent did not. The District Court's failure to reconcile its changed course highlights the arbitrary and capricious error in the initial class certification order.

The District Court then changed course again when Torrent renewed the motion for class certification. Torrent did exactly what the District Court contemplated – Torrent submitted evidence that he "intends to buy Yakult in the future." (Doc. 52, pg. 8). Indeed, the District Court even noted that the renewed motion for class certification was "in direct response to this Court's prior ruling." (Doc. 65, pg. 4). And the District Court's initial class certification order would have required class certification based on this new evidence. But the District Court shifted the analysis again – the very evidence the District Court previously found wanting in the initial class certification order was now seen as an attempt to "manufacture standing." (Doc. 65, pg. 4).

Ultimately, therefore, even though the District Court allowed Torrent to pursue a putative class action seeking injunctive relief under the UCL, the District Court condemned and chided Torrent for having the audacity to purchase Yakult and otherwise trying to prove his case. The District Court did not cite any legal authority for such reasoning, and the reasoning was fundamentally wrong.

Litigants should not be castigated by District Courts for following the logic of their orders. C*f. Brooks v. Cook*, 938 F.2d 1048, 1055 (9th Cir. 1991) (abuse of discretion for penalizing party for doing "exactly what this court said he could do"). Nor should consumer plaintiffs be somehow estopped from purchasing the falsely advertised product at issue. A plaintiff's attempt to hold a defendant liable for classwide false advertising does not come with the price of prior restraint in the consumer marketplace. There was no injunction from Torrent purchasing Yakult. Torrent's purchase of Yakult was not somehow a conflict with his lawsuit. Torrent had every right to purchase Yakult during this case and in the future. The District Court had no sound nor legal basis to close the courthouse doors to Torrent for purchasing and committing to purchase the very product about which Torrent sued.

### C. The District Court Committed Clear Error in Rejecting Torrent's Renewed Motion for Class Certification Based on a Perceived Local Rule Violation

There was no prohibition against Torrent renewing a motion for class certification. The perceived violation of Local Rule 7-18 was not properly raised to the District Court since Defendant never raised the issue in the meet and confer prior to the renewed motion for reconsideration. That local rule governs motions for reconsideration, and Torrent's motion was a renewed motion for class certification. Moreover, the District Court's scheduling order did not circumscribe the amount of times Torrent would be able to move for class certification. (Doc.

35, at p. 1). Thus, Torrent complied with the District Court's own scheduling order "control[s] the subsequent course of the action." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 608 (9th Cir. 1992) (internal citation omitted).

Regardless, local rules cannot trump class certification under Rule 23. *Compare*, *e.g.*, *Williams v. U.S. Dist. Court*, 658 F.2d 430, 435-437 (6th Cir. 1981) ("[T]he Local Rule tends to discourage communication, and thus to discourage use of the class action device . . . [and] we issue a writ of mandamus to the district court directing it . . . to refrain from enforcing the provisions of Local Rule 3.9.4"). Class certification (including its denial) can be addressed at any time before judgment. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

There may even be an inherent duty to determine whether a class exists, even when no representative steps forward. *See*, *e.g.*, *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1216 (11th Cir. 2003) ("[T]he court must go on to decide whether any of the named plaintiffs are qualified to serve as class representative and, if not qualified, whether a member of the class is willing and qualified to serve as class representative.").

Furthermore, class certification is routinely adjusted to meet the evidence and the law. Ironically, the "digestive health" litigation regarding General Mills is a prime example, where very same the District Court itself issued six different

class certification orders, with questions and adjustments made along the way as the law and record evidence developed. *See*, *e.g.*, *Johnson v. General Mills*, 272 F.R.D. 282 (C.D. Cal. 2011); *Johnson v. General Mills*, 276 F.R.D. 519 (C.D. Cal. 2011); *Johnson v. General Mills*, 278 F.R.D. 548 (C.D. Cal. 2011); *Johnson v. General Mills*, No. SACV 10–00061–CJC(ANx), 2013 WL 3213832, at *1 (C.D. Cal. June 17, 2013).

In sum, Torrent was not violating any local rules in renewing his motion for class certification. Torrent was complying with the District Court's scheduling order, presenting evidence the District Court itself identified as wanting in the first class certification order, abiding by Rule 23, and trying to have his day in court. At its core, the District Court's denial of Torrent's renewed motion for class certification based on the purported local rule violation deprived Torrent of his ability to pursue to his case. Put differently, the District Court's denial ran afoul of the basic principle in our country that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).

### D. Torrent Easily Satisfied the Elements of Class Certification

The U.S. Eleventh Circuit Court of Appeals ordered class certification for the same type of "digestive health" advertising at issue here when done by General Mills. *Fitzpatrick*, 635 F.3d 1279. The District Court in this case itself

issued several class certification orders in the wake of *Fitzpatrick*. *See Johnson*, *supra*. The class here should be certified for the same reasons as in the General Mills litigation – it is the same false advertising, just performed by a different defendant. Torrent easily satisfied his burden of establishing each of the four elements of Rule 23(a) and the requirements of Rule 23(b)(2).

## VIII. CONCLUSION

WHEREFORE, for the foregoing reasons, this Court should reverse the District Court's denial of class certification and remand for Torrent to proceed on classwide injunctive relief claims under the UCL.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(C). The brief uses a proportionally spaced Times New Roman typeface, 14-point. The brief contains 3,899 words, according to Microsoft Word word processing software.

/s/ *Cullin O'Brien*
Cullin O'Brien

Fla. Bar. No. 0597341
CULLIN O'BRIEN LAW, P.A.
6541 NE 21st Way
Ft. Lauderdale, Florida 33308
Telephone: (561) 676-6370
Fax: (561) 320-0285
cullin@cullinobrienlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 23, 2017 a true and correct copy of the foregoing has been filed with ECF and served on Appellee's attorneys who are registered to receive electronic filings.

/s/ *Cullin O'Brien*
Cullin O'Brien